UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BROADCAST MUSIC, INC., EMI
VIRGIN SONGS, INC., FOURTEENTH
HOUR MUSIC, INC., COTILLION
MUSIC, INC., WARNER-TAMERLANE
PUBLISHING CORP., STONE DIAMOND
MUSIC CORP., RONDOR MUSIC
INTERNATIONAL, INC., SPRINGTIME
MUSIC, INC., MJ PUBLISHING TRUST
and SONY/ATV LATIN MUSIC
PUBLISHING, LLC,

       Plaintiffs,

v.                                                                                          Case No: 8:15-cv-289-T-36TBM

COOL HAND ENTERTAINMENT, LLC
and ERIC FLEMING,

       Defendants.

_____/

## O R D E R

This matter comes before the Court upon Plaintiffs' Amended Motion for Summary Judgment or, in the alternative, to Strike Defendants' Jury Demands and Enter Default Judgment (Doc. 37), to which Defendants have not responded.  In the Motion, Plaintiffs seek summary judgment because no genuine issues of material fact exist. In the alternative, Plaintiffs seek to strike Defendants' jury demands and the entry of default judgment as a sanction against Defendants for failure to comply with a Court order.  The Court, having considered the motion and being fully advised in the premises, will GRANT in part and DENY in part the Motion.

I.      **FACTUAL AND PROCEDURAL HISTORY[1]**

---

[1] The Court has determined the facts, which are undisputed unless otherwise noted, based on the parties' submissions, including stipulated facts, declarations, and attachments thereto. *See* Docs. 29-32, 37-39.

Plaintiffs bring this action, pursuant to 17 U.S.C. § 101 *et seq.* ("Copyright Act"), for ten claims of willful copyright infringement of music licensed by Plaintiff Broadcast Music, Inc. ("BMI"). BMI licenses the right to publicly perform copyrighted musical compositions on behalf of the copyright owners of the works. The other Plaintiffs are the owners of the copyrights in the musical compositions. They are: EMI Virgin Songs, Inc. d/b/a EMI, Longitude Music, Fourteenth Hour Music, Inc., Cotillion Music, Inc. d/b/a Pronto Music, Warner-Tamerlane Publishing Corp., Stone Diamond Music Corp., Rondor Music International d/b/a Irving Music, Springtime Music, Inc., MJ Publishing Trust d/b/a Mijac Music, and Sony/ATV Latin Music Publishing, LLC (collectively referred to as "other Plaintiffs"). Doc. 32.

BMI operates as a nonprofit-making performing rights organization. Doc. 29; Lloyd Decl. ¶¶ 3, 4. It grants to music users, such as the owners and operators of concert halls, "blanket license agreements" that allow the licensee to publicly perform any of the works in BMI's repertoire. *Id.* at ¶ 2. These licenses permit music users to perform any of the over 10.5 million musical compositions in the BMI repertoire. *Id.* at ¶ 5. In addition, BMI has been granted by the other Plaintiffs the right to maintain actions for infringement of the public performance rights in their musical compositions and to seek damages for such infringement. *Id.*

Defendants, Cool Hand Entertainment, LLC d/b/a Ybor City Jazz House, and Eric Fleming (collectively "Defendants"), operated and maintained a facility known as Ybor City Jazz House located at 1611 E. 7th Avenue, Tampa, Florida 33605-3705 ("Jazz House") which regularly features performances of live and recorded music. Doc. 31-1; Ex. A, Requests for Admission ("RFA") ¶ 1; Doc. 30; Mullaney Decl. ¶ 3 & Exs. A-1& E.

Between January 2014 and December 2014, BMI repeatedly informed the Defendants of the need to obtain permission for public performances of copyrighted music. Mullaney Decl. ¶¶ 3-

2

16.   Between January 2014 and December 2014, Plaintiff Broadcast Music, Inc. offered to grant a license for public performances of musical compositions at Jazz House. RFA ¶ 23; Mullaney Decl. ¶ 9 & Ex. C-4, C-7 & C-8. During a telephone call on February 7, 2014, Mr. Fleming agreed to an in-person meeting with BMI representative Cindy Liles. Mullaney Decl. ¶ 9 & Ex. B-2. On February 20, 2014, BMI representative Cindy Liles met with Mr. Fleming at the Jazz House. *Id.* During this meeting, Mr. Fleming completed a license agreement and accepted the option of making quarterly payments, with the first payment due on February 26, 2014. *Id.* Defendants, however, did not provide payment. *Id.*

During a telephone conversation on March 17, 2014, a BMI representative asked Mr. Fleming for payment. Mullaney Decl. ¶ 16 & Ex. B-2. In response, Mr. Fleming stated that he is not avoiding BMI but recently was the victim of identity theft, so his accounts are messed up. *Id.* He said he would be able to make payment the following week, and BMI was to call him then. *Id.* During a telephone conversation on March 28, 2014, a BMI representative asked Mr. Fleming about payment of the license fee. Mullaney Decl. ¶ 16 & Ex. B-3. Mr. Fleming responded that, because of a family illness, making payment was the furthest thing from his mind, and he hung up. *Id.* On April 7, April 15, and May 12, 2014, a BMI representative left Mr. Fleming voicemail messages seeking payment of the license fee. *Id.*

Thereafter, public performances of BMI-licensed music occurred at the Jazz House including performances on November 28, 2014 and November 29, 2014. Mullaney Decl. ¶¶ 18-19 & Ex. E. The performances of Plaintiffs' songs were documented in a written report by a BMI investigator. *Id.* On that evening and early morning, the Defendants were not licensed by any of the Plaintiffs to publicly perform any of their musical compositions at the Jazz House. RFA ¶ 23-24; Mullaney Decl. ¶ 17 & Ex. C-14, C-25. The musical compositions were:

a.      Title:  Boogie Shoes
Writer: Harry Wayne Casey a/k/a H.W. Casey
Dates of Registration 8/18/75, 3/27 /78
Registration No. Eu 606202 PA 10-277

b.      Title:  Chain Of Fools
Writer: Don Covay
Dates of Registration 3/4/68, 12/31/96
Registration Nos. Ep 244288, RE 742-859

c.      Title:  Everyday People
Writer: Sylvester Stewart
Date of Registration 1/21/69
Registration No. Eu 99873

d.      Title:  Get Down Tonight
Writer:  Harry W. Casey
Date of Registration 6/12/75, 6/21/76
Registration Nos. Eu 591389, Ep 354211

e.      Title:  Love Train
Writers: Kenny Gamble; Leon Huff
Date of Registration 3/16/73, 4/30/73
Registration Nos. Ep 309589, Ep 312436

f.      Title:  Reach Out I'll Be There
Writers: Brian Holland; Lamont Dozier; Eddie Holland
Date of Registration 8/17/66
Registration No. Ep 220667

g.      Title:  Respect
Writer: Otis Redding
Date of Registration 1/4/93
Registration No. RE 608-238

h.      Title:  Rock Steady
Writer: Aretha Franklin
Date of Registration 1/31/72
Registration No. Ep 295753

i.      Title:  Wanna Be Startin' Somethin'
Writer: Michael Joe Jackson
Date of Registration 11/16/82 12/27/82
Registration Nos. Pau 456-336, Pa 158-770

j.      Title:  Suavemente

Writer: Elvis Crespo
Date of Registration 1/29/99
Registration No. PA 934-438

RFA ¶¶ 11, 13; Mullaney Decl. Ex. E.

On the evening of November 28, 2014, and the early morning of November 29, 2014, Cool Hand operated and maintained Jazz House, had the right and ability to direct and control the activities in Jazz House, and had a direct financial interest in Jazz House. RFA ¶ 2, 3; Mullaney Decl. Exs. A-1 & C-26. On that evening and early morning, Mr. Fleming was president, owner, registered agent and a member of Cool Hand. RFA ¶ 4; Mullaney Decl. Exs. A-1 & C-26. On that evening and early morning, Mr. Fleming operated and maintained Jazz House, had the right and ability to supervise the persons employed by Jazz House, the right and ability to direct and control the activities of Jazz House, and had a direct financial interest in Jazz House. RFA ¶ 5, 6, 7, 8; Mullaney Decl. Exs. A-1, B-2, B-3, & C-10 through C-26.

On February 10, 2015, Plaintiffs filed the instant action asserting ten willful copyright infringement claims.  Doc. 1 at ¶ 20. Defendants appeared and filed Answers, which include a general denial of all allegations raised in the Complaint, one affirmative defense, and a demand for a jury trial.  Docs. 16, 17.  Previously, Plaintiffs filed a motion for summary judgment, which the Defendants did not respond to, despite having been warned of the consequences of failing to respond in opposition. Docs. 28, 32. The Court denied the Motion with leave to file a Second Motion for Summary Judgment. Thereafter, Plaintiffs timely filed the instant motion which the Defendants, again, did not respond to, despite having been warned of the consequences of failing to respond in opposition. Docs. 37, 44. As a result, Plaintiffs' version of the facts controls, to the extent that those facts are supported by the record.

## II.       LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact.  *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004).  That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case."  *Celotex*, 477 U.S. at 325.

When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact.  *Id.* at 324.  Issues of fact are "genuine only if a reasonable jury, considering the evidence present, could find for the nonmoving party," and a fact is "material" if it may affect the outcome of the suit under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party.  *Celotex*, 477 U.S. at 323.  However, a party cannot defeat summary judgment by relying upon conclusory allegations.  *See Hill v. Oil Dri Corp. of Ga.*, 198 Fed. App'x 852, 858 (11th Cir. 2006).

## III.      DISCUSSION

Plaintiffs move for summary judgment on Defendants' liability for copyright infringement, statutory damages, permanent injunctive relief, attorneys' fees and costs.  Although the Motion is unopposed, the Court is obligated to ascertain whether Plaintiffs are entitled to judgment on the

merits.  *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1102 (11th Cir. 2004).

Pursuant to 17 U.S.C. § 501, anyone who violates the exclusive rights of a copyright owner is an infringer of a copyright.  17 U.S.C. § 501(a).  In the case of a musical composition, the rights of the copyright owner include the right "to perform the copyrighted work publicly."  17 U.S.C. § 106(4).  When an infringement claim is based on the unauthorized public performance of a musical composition, a plaintiff must establish five factors:

> (1) the originality and authorship of the compositions involved;
>
> (2) compliance with all formalities required to secure a copyright under Title 17, United States Code;
>
> (3) that plaintiffs are the proprietors of the copyrights of the compositions involved in the action;
>
> (4) that the compositions were performed publicly by the defendant; and
>
> (5) that the defendant had not received permission from any of the plaintiffs or their representatives for such performance.

*Broad. Music, Inc. v. Evie's Tavern Ellenton, Inc.*, 772 F.3d 1254, 1258 (11th Cir. 2014).  The Copyright Act provides that "to 'perform' a work means to recite, render, play, dance, or act it, either directly or by means of any device or process[.]"  17 U.S.C. § 101.

Plaintiffs do not contend that Cool Hand or Fleming committed direct infringement by performing the works themselves.  *See Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004) (stating that direct infringement occurs only when "the defendant himself violated one or more of the plaintiff's exclusive rights under the Copyright Act"); *Polygram Int'l Publ'g, Inc. v. Nev./TIG, Inc.*, 855 F. Supp. 1314, 1322 (D. Mass. 1994) ("the only bases for liability of the nightclub owner are vicarious and contributory liability because the owner is not performing the work").  Plaintiffs

instead assert that Cool Hand and Fleming are vicariously liable "for infringing acts committed at the Ybor City Jazz House."  Doc. 1 ¶¶ 14-18.

In the copyright context, vicarious liability "arises when the defendant profits directly from the infringement and has a right and ability to supervise the direct infringer, even if the defendant initially lacks knowledge of the infringement."  *BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 489 F.3d 1129, 1138 n.19 (11th Cir. 2007) (internal quotation marks omitted).  However, vicarious liability will not attach "without first establishing direct infringement by the performer." *New World Music Co. (LTD) v. Tampa Bay Downs, Inc.*, No. 8:07-cv-398, 2009 WL 35184, at *4 (M.D. Fla. Jan. 6, 2009); *see also Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 940 (2005) (assessing a claim based on contributory infringement).[2]

Here, Plaintiffs have established Defendants' liability for copyright infringement as a matter of law. The first three elements are established by, BMI's Assistant Vice President (Legal) Hope Lloyd's Declaration ("Lloyd Declaration") which constitutes sufficient evidence of the facts sworn to therein. 28 U.S.C. § 1746. The Lloyd Declaration, referring to the Schedule attached to the Complaint, sets forth the names of the authors and publishers of each composition, the date of copyright registration and the registration number. Doc. 29 at ¶ 4. The Lloyd Declaration is supplemented with copies of each registration certificate and subsequent documentation of ownership of the songs. *Id.*; *See E Beats Music v. Andrews*, 433 F. Supp. 2d 1322, 1325-26 (M.D. Ga. 2006) ("Plaintiffs met the first three elements by submitting copies of copyright registration

---

[2] Some courts, in assessing a defendant's vicarious liability, have not expressly addressed whether the performer directly infringed the copyright, but the early and leading cases on vicarious liability included such a finding.  *See Polygram Int'l Publ'g, Inc.* 855 F. Supp. at 1322 (discussing the development of case law on this issue); *e.g., Dreamland Ball Room v. Shapiro, Bernstein & Co.*, 36 F.2d 354, 355 (7th Cir. 1929) ("Infringement by the orchestra is conceded"); *Simpleville Music v. Mizell*, 451 F. Supp. 2d 1293, 1295 (M.D. Ala. 2006) ("Neither station had ASCAP's permission to perform these compositions.").

certificates, which constitute prima facie evidence of the copyright's validity."). The fourth element, public performance, is established by the Certified Infringement Report of Holly Diaz, a BMI representative, who visited the Establishment and made a written report of the musical compositions performed. *See* Doc. 30 at ¶¶ 18-19 & Ex. E and Doc. 39. The performance element of a copyright claim may be proven by an investigator's certification. *See* 28 U.S.C. § 1746 (permitting proof by declaration); *Broadcast Music, Inc. v. Pine Belt Investment Dev.*, Inc., 657 F. Supp. 1016, 1020 (S.D. Miss. 1987) (public performance proven by affidavit despite defendant's general denial); *Sailor Music v. Mai Kai of Concord, Inc*., 640 F. Supp. 629, 633 (D. New Hampshire 1986) (public performance element established through affidavits of representatives who sat through performances).

The fifth element, lack of authorization, is similarly established by Vice President (Sales and Licensing) Brian Mullaney's Declarations ("Mullaney's Declarations") and likewise undisputed. Docs. 30, 39. The Mullaney Declarations verify that the Defendants did not make the payment required to establish a BMI license, nor were the performances otherwise authorized, and that the Ybor City Jazz House's entertainers on November 28-29, 2014, likewise did not have the required licenses. *See* Doc. 30 at ¶¶ 9-16 & Ex. B-4 and Doc. 39 at ¶¶ 2-6. More specifically, neither Defendants' band, the Black Honkeys, nor any DJ had a license to perform music from BMI's repertoire at the Ybor City Jazz House, and neither BMI nor any other Plaintiff authorized performances of their works at the Ybor City Jazz House. Doc. 39 at ¶¶ 2-6. Plaintiffs have established that Defendants offered these public performances of copyrighted music without permission and after notice. Accordingly, the elements of copyright infringement, therefore, have been proven by undisputed evidence.

Additionally, both Defendants are liable for infringing acts committed at the Ybor City Jazz House. A corporation that owns a business offering infringing entertainment is liable for that infringement based upon its financial interest in the public performances, benefit from them, and control of the establishment. *See, e.g., Broadcast Music, Inc. v. Evie's Tavern Ellention, Inc.,* 2011 WL 6012201, at *3 (M.D. Fla. 2011) (discussing owner liablity). Because Cool Hand owns and operates the Establishment, Cool Hand is liable for the performance and infringement that occurred on premises.

Similarly, as Cool Hand's president and owner, Eric Fleming, is the corporate officer directly controlling the Establishment and is liable for infringing acts committed at Ybor City Jazz House. Under the Copyright Act, "an individual who is the dominant influence in a corporation and has the capacity to control the acts of that corporation may be held jointly liable with the corporation for any proved infringements, even in the absence of the individual's actual knowledge that the infringements occurred." *Nick-O-Val Music Co., Inc. v. P.O.S. Radio, Inc.,* 656 F. Supp. 826, 828 (M.D. Fla. 1987); s*ee also Sailor Music*, 640 F. Supp. at 633 (holding corporate officer liable as joint tortfeasor). Specifically, a corporate officer such as Mr. Fleming is jointly and severally liable, with his corporation for copyright infringement if he: (1) "has the right and ability to supervise the infringing activity," and (2) "has a direct financial interest in such activities." *Broad. Music, Inc. v. Peppermint Club, Inc.,* C 83-694, 1985 WL 6141, at *5 (N.D. Ohio Dec. 16, 1985) (citation omitted). As Cool Hand's president, Mr. Fleming had responsibility for the day-to-day activities at Ybor City Jazz House, as his communications with Plaintiffs illustrate. *See* Doc. 30 at ¶ 9 (discussing BMI representative's in-person meeting and telephonic conversations with Mr. Fleming) and *Id.* at ¶ 10 (discussing BMI correspondence to Mr. Fleming). Mr. Fleming clearly had the right and ability to direct and control the activities at Ybor City Jazz House and

had a direct financial interest in the business. Mr. Fleming, therefore, is personally liable for the acts of infringement that benefitted his business. As no genuine issues of material fact exist, Plaintiffs are entitled to a judgment in their favor as a matter of law.

## IV. RELIEF REQUESTED

Plaintiffs request permanent injunctive relief, statutory damages, reasonable attorneys' fees and award of their costs.

### a. Injunctive Relief

Pursuant to 17 U.S.C. § 502(a), the court may "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." A plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006). "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion." *Id.*

The Complaint does not provide evidence of actual damages, if any, suffered by Plaintiffs as a result of Defendants' infringement. But, due to the possibility of future infringement by Defendants and others, and the seemingly unknowable extent of that infringement, monetary damages alone are inadequate to compensate Plaintiffs for any injury it has sustained or may sustain in the future.

First, with regard to the irreparable harm factor, the Eleventh Circuit has held that, under the Copyright Act, "a plaintiff need not show irreparable harm in order to obtain a permanent injunction, so long as there is past infringement and a likelihood of future infringement." *CBS Broadcasting, Inc. v. EchoStar Communications Corp.*, 450 F.3d 505, 517 n. 25 (11th Cir. 2006). Here, the long history of BMI's negotiations with Defendants, their refusal to pay the agreed license fee, and the numerous infringing works performed at their business after notice demonstrate both past infringement and a likelihood of future infringement. *See* Doc. 30 at ¶¶ 3-19. But in any event, the harm to Plaintiffs from future infringement of this nature is inherently irreparable. Moreover, as a practical matter, Plaintiffs and other music owners simply cannot afford to monitor Defendants' establishment continuously and to sue for money damages each time an unlicensed song is played.

Second, Plaintiffs have no adequate remedy at law. Although Plaintiffs are entitled to monetary relief, that remedy alone would be insufficient. Money damages for past violations of a plaintiff's rights under copyright law do not provide an "adequate remedy" to prevent damage from further infringement. *McPherson v. Seaduced, LLC*, Case No. 8:14-CV-2315-T-33, 2015 WL 1811029, at *3 (M.D. Fla. April 21, 2015). The undisputed evidence in this case shows that Defendants offered performances of BMI works after being told for months that they needed a license. *See* Doc. 30 at ¶¶ 3-19. In the face of such willful infringement, monetary relief alone will not suffice.

Third, the balance of hardships favors injunctive relief. Defendants have no right to make commercial use of Plaintiffs' copyrighted works, so injunctive relief would cause Defendants no legally recognizable hardship. But Plaintiffs would sustain hardship, including lost revenue, if

Defendants are not enjoined from engaging in the infringing activity. The balance of hardships, therefore, favors granting an injunction.

Fourth, injunctive relief is in the public interest to protect copyrights of the songs, but also to support creative pursuits. Here, because the Defendants have refused to pay for a license and continue to offer unauthorized performances of Plaintiffs' music, broad injunctive relief is appropriate and necessary. The Court will issue a permanent injunction by separate Order.

### b.    Statutory Damages

A prevailing plaintiff may recover actual or statutory damages under the Copyright Act. 17 U.S.C. § 504(c)(1). The plaintiff may make its election between actual and statutory damages "at any time before final judgment is rendered." *Jordan v. Time, Inc.,* 111 F.3d 102, 104 (11th Cir. 1997) (quoting 17 U.S.C. § 504(c) (providing for statutory damages between $750 and $30,000 per work infringed)).

Here, Plaintiffs seek $30,000 for the ten acts of copyright infringement. Cool Hand and Fleming included a jury demand in their Answers (Docs. 16, 17). Despite Plaintiffs assertions to the contrary, *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 355 (1998) is controlling in this case. "[T]he Seventh Amendment provides a right to a jury trial on all issues pertinent to an award of statutory damages under § 504(c) of the Copyright Act, including the amount itself." *Feltner*, 523 U.S. at 355 (1998); *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1283 (11th Cir. 2015). Because Plaintiffs request $3,000 per work allegedly infringed, which is above the minimum statutory amount of $750, Defendants are entitled to a jury trial on the issue of damages. Therefore, the Court will provide three options for the Plaintiffs: (1) the damages can be assessed without a hearing; *See Clever Covers, Inc. v. Sw. Fla. Storm Def.*, LLC, 554 F. Supp. 2d 1303, 1307 n.2 (M.D. Fla. 2008) (holding that no jury trial is required under *Feltner* when a

plaintiff seeks only the statutory minimum amount of $750); *accord BMG Music v. Gonzalez*, 430 F.3d 888, 892 (7th Cir. 2005); or (2) Plaintiffs may file a separate motion seeking to strike the demand for a jury trial as to the issue of damages; or (3) a jury trial as to damages can be scheduled. *See Yellow Pages Photos*, 795 F.3d at 1283 (quoting *Feltner*, 523 U.S. at 355 ("[I]f a party so demands, a jury must determine the actual amount of statutory damages under § 504(c) in order to preserve the substance of the common-law right of trial by jury.")(internal quotation marks and citation omitted)). Within fourteen (14) days, Plaintiffs shall file a notice advising the Court as to how they wish to proceed, including the filing of a motion to strike the jury demand. Otherwise, a jury trial will be scheduled to determine the amount of damages.

**c.    Attorneys' Fees**

Plaintiffs seek to recover attorneys' fees expended on this litigation in the amount of $31,351, which represents a total of 97.6 hours. Doc. 38 at ¶ 3. The billing rates range from $150-$405 per hour for a law clerk, paralegal and three attorneys. *See* Doc. 38 at ¶ 4. The Court agrees that Plaintiffs are entitled to an award of attorneys' fees, pursuant to 17 U.S.C. § 505. *See Kirtsaeng v. John Wiley & Sons, Inc*., 136 S. Ct. 1979, 1984 (2016). However, the Court will defer ruling on the amount of attorneys' fees until after the statutory damages is determined and a final judgment entered, as Plaintiffs will incur more fees for a jury trial. In accordance with Rule 54(d), Fed. R. Civ. P., Plaintiffs may file a motion for attorneys' fees upon entry of a final judgment.

**d.    Costs**

Plaintiffs have incurred costs in the amount of $2,206.75. *See* Doc. 37. The Copyright Act expressly provides that the court "in its discretion may allow the recovery of full costs ..." 17 U.S.C. § 505. In light of the Defendants' deliberate misconduct and the statutory purpose of encouraging private enforcement of the Copyright Act, the Court will award costs in this case. The

Case 8:15-cv-00289-CEH-TBM Document 46 Filed 03/29/17 Page 15 of 16 PageID 647

amount of costs will be determined after entry of a final judgment, in accordance with Rule 54(d), Fed. R. Civ. P.

## V. ALTERNATIVE MOTION TO STRIKE JURY DEMANDS AND FOR DEFAULT JUDGMENT

In the alternative, Plaintiffs request that this Court strike Defendants' jury demands and enter default judgment under Federal Rule of Civil Procedure 16(f) and Paragraph VI of this Court's Case Management and Scheduling Order, as Defendants responded to the Complaint with answers and an affirmative defense. *See* Docs. 16, 17. BMI's requested relief is simply not warranted. *See Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.,* 561 F.3d 1298, 1302 (11th Cir. 2009) (noting that the severe sanction of a default judgment is appropriate only as a last resort). The Court will not enter a default judgment, but, as set forth above, will consider a separate motion to strike the demand for a jury trial.

## VI. CONCLUSION

Accordingly, it is hereby **ORDERED** as follows:

1.   Plaintiffs' Amended Motion for Summary Judgment or in the alternative, to Strike Defendants Jury Demands and for Default Judgment (Doc. 37) is **GRANTED-IN-PART** and **DENIED-IN-PART**.

2.   The Motion is **GRANTED** as to the issue of liability and entitlement to injunctive relief, statutory damages, attorneys' fees and costs.

3.   The Motion is **DENIED**, without prejudice**,** as to the amount of statutory damages. Within **FOURTEEN (14) DAYS** from the date of this Order, Plaintiffs shall file a notice advising the Court as to how they wish to proceed regarding statutory

damages. Otherwise, a jury trial will be scheduled to determine the amount of damages.

4.      Plaintiffs are entitled to attorneys' fees, pursuant to 17 U.S.C. § 505, and costs. The Court will defer ruling on the amount. Plaintiffs may file a motion for attorneys' fees and costs, upon entry of a final judgment.

**DONE AND ORDERED** in Tampa, Florida on March 29, 2017.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any